**No. 06-587
(Judge Loren A. Smith)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**UNIONBANCAL CORPORATION & SUBSIDIARIES,**

**Plaintiff,**

v.

**THE UNITED STATES,**

**Defendant.**

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STAY PROCEEDINGS**

On May 17, 2010, solely in the interest of judicial efficiency, Defendant filed a Motion to Stay Proceedings in this case, pending the outcome on appeal of *Wells Fargo v. United States*, Fed. Cir. No. 2010-5108. As we explained, *Wells Fargo* and this case involve very similar transactions and facts. The same legal issues are presented in both cases. Thus, before proceeding with trial in this case, it only makes sense to obtain the guidance that inevitably will be obtained from the Federal Circuit's legal rulings and their application to a nearly identical fact pattern and transactional structure. The Federal Circuit's decision in *Wells Fargo* promises to clarify and simplify the evidence to be presented at trial (by resolving the parties' differences regarding legal standards that will determine the relevance of certain evidence), provide the Court with binding legal principles that will assist it in considering the evidence it will hear at trial, and perhaps even avoid entirely the need for trial and further litigation. Defendant does not wish to overstate the benefits of a stay, but it is accurate to say that defendant and the many large corporations that engaged in LILOs and

1

SILOs have been engaged in a long war over their tax treatment, and the Federal Circuit's supervisory appellate decision may well bring to a conclusion the front in that war in this Court that includes not only *Wells Fargo*, but this case and *Consolidated Edison* (all of which involve plaintiff's counsel here).

Plaintiff, nevertheless, opposes a stay. Plaintiff states (uncontroversially) that each case must proceed on its own facts. But plaintiff does not suggest in its Opposition any material differences in the facts regarding its transactions, Wells Fargo's transactions, the transactions before various other courts, or the thousands of LILO and SILO transactions that were the subject of an IRS global settlement initiative in the fall of 2008.[1] Plaintiff also does not dispute that the same legal issues are presented in *Wells Fargo* and this case. Yet, by focusing so completely on the maxim that its suit should be decided on its own facts, plaintiff ignores the obvious link between this case and *Wells Fargo*. As far as would appear in plaintiff's Opposition, *Wells Fargo* has no connection whatever with this case. From the discussion in plaintiff's Opposition, *Wells Fargo* might as well be a takings case as what it is, a tax case, like this one, in which a transactional structure was created based on an oft-repeated script and as to which very large tax benefits were claimed. Despite the parallel structures and duplicate legal issues, plaintiff concludes, in evident hyperbole, that "there are no conceivable benefits from a stay." (Opp. at 6.)

At the May 21, 2010 hearing before this Court, the Court requested that the parties focus on the efficiencies that will result from granting the stay, balanced against the potential for unnecessary

---

[1]Plaintiff recognized that its transactions were of the type described in the settlement initiative, as it moved this Court to defer proceedings while it considered whether to settle under that initiative.

delay that could result. Defendant does so in this reply, as well as responds further to plaintiff's Opposition to that stay.

There are numerous efficiencies and advantages from awaiting the Federal Circuit's decision in *Wells Fargo*. As indicated above, the legal questions presented here and in *Wells Fargo* are the same. In its Opposition, plaintiff describes the ultimate issues in this case to be "whether Plaintiff's lease-leaseback transactions possess economic substance and whether, under the substance-over-form analysis, Plaintiff acquired the benefits and burdens of ownership with respect to the property at issue." In its Docketing Statement in the Federal Circuit, *Wells Fargo* used almost the same language to describe the issues on appeal in its transactions:

(1) Whether the [sale-leaseback] transactions possess economic substance; and
(2) Whether Wells Fargo acquired the benefits and burdens of ownership.

The difference between the lease-leaseback transactions here, and the sale-leaseback transactions in *Wells Fargo* is subtle. Both are structured and labeled as a lease to the bank (not a sale) followed by a lease back to the same lessor. A "sale" in a sale-leaseback (SILO) is just a lease for a relatively longer term than a "lease" in lease-leaseback (LILO), such that it is claimed to be, in effect, a sale. As a result, depreciation deductions are claimed, rather than rent deductions. The issues in either, as plaintiff's own statements reveal, center around whether what is in form a lease will be respected for tax purposes under applicable legal principles. A further issue common to both LILOs and SILOs is whether the purported financing for the lease and leaseback obligations should be respected for tax purposes as real debt under applicable legal principles. The debt is structured essentially the same in plaintiff's LILOs as it is in Wells Fargo's SILOs. Defendant contends that such debt is "loop debt" – money that never leaves the bank that is accommodating the transaction (for a fee) and travels in an accounting circle to pay rent under the lease, then back to pay leaseback

rent, and completing the circle by making payments to the bank for the "loan." Defendant contends that this loop debt is not real and does not entitled the purported borrower to interest deductions.

These are the "top level", big picture issues both here and in *Wells Fargo*. They involve the standards under which both the economic substance and the substance over form doctrines should be applied to SILO and LILO transactions. The Federal Circuit will describe those legal standards in the context of the SILO transactions before it. This Court will then assess, in light of that guidance, the extent to which they apply to the LILO transactions plaintiff engaged in. Defendant maintains that the transactions are essentially the same, and that, under whatever legal standards the Federal Circuit determines, there should be little if any justification for reaching a different result. Plaintiff is free to disagree, if it chooses, and to explain the particulars of its LILO transactions and argue that they are materially different than those the court of appeals considered and that the Federal Circuit's legal standards are inapplicable. This Court will have to resolve any such differences, of course, and it will, of necessity, look carefully at the appellate decision in *Wells Fargo* in doing so.[2] A stay offers the clear benefit of providing this Court with both binding legal principles, and the guidance of their application to transactions defendant, at least, regards as very much like those that are at issue here.

---

[2]The parties, likewise, will look carefully at the Federal Circuit's opinion and assess their litigation positions in light of it. Defendant believes it will prevail on appeal, and the near unanimity of the courts that have considered LILOs and SILOs support that belief. The only opinion that favors taxpayers is *Consolidated Edison*, which defendant considers an "outlier." Plaintiff in that case very recently has been permitted to raise new issues, and there is no judgment from which an appeal may be taken to obtain further appellate guidance. If defendant does prevail on appeal in *Wells Fargo*, such a decision might result in the end of the remaining LILO litigation in this Court.

There are, of course, subsidiary legal issues. For example, a factor in determining whether to respect a lease/sale transaction for tax purposes is whether the transaction can reasonably turn an economic profit. Plaintiff and Wells Fargo disagree with defendant regarding whether the time value of money should be taken into account in assessing profit potential. Plaintiff's counsel has contended at length in briefing that net present value adjustments should not be made in SILOs/LILOs. The Court of Federal Claims in *Wells Fargo* agreed with defendant that the time value of money should be taken into account and present value adjustments are proper. *Wells Fargo v. United States*, 91 Fed. Cl. 35, 82-83 (2010); *but see Consolidated Edison v. United States*, 90 Fed. Cl. 228, 327-29 (2009). The Federal Circuit undoubtedly will resolve this dispute and determine the proper legal standard. It will affect whether plaintiff is permitted in a future trial to offer evidence on profitability that ignores present value, or whether defendant may not rely on present value adjustments. Its ruling on this one subsidiary question alone will have a substantial narrowing effect on the expert evidence to be presented at trial.[3]

There can be no serious dispute, with respect either to the commonality of legal issues presented in this case and *Wells Fargo,* that the Federal Circuit will resolve those issues with reference to the transactions before it, or that the parties here will then present this Court with their views regarding the applicability of the Federal Circuit's legal rulings to plaintiff's transactions.

---

[3]Similarly, the parties have different legal views regarding how the Court should consider whether plaintiff was at risk from the transactions, and the Federal Circuit's holding will assist this Court in deciding at trial whether it must hear detailed evidence regarding the likelihood the purchase option will be exercised or whether the evidentiary focus should be on all the options plaintiff had with respect to the lease. The resolution of this issue, like present value adjustments, promises to greatly streamline the presentation of this case and eliminate contentious evidentiary disputes.

Plaintiff's focus in its Opposition on the uncontroversial proposition that its case should be decided on its facts is used to lead this Court to think (without actually saying it) that its facts are different than those in *Wells Fargo*. Likewise, plaintiff invites this Court to believe (again, without saying it) that the Federal Circuit will not resolve any legal questions that will be useful to this case. But the *Wells Fargo* appeal being pursued by plaintiff's counsel here undoubtedly will not be based on the assertion that the Court of Federal Claims misunderstood the facts and reached erroneous factual conclusions that should be reversed under the clearly erroneous standard of review. We trust, and Wells Fargo's docketing statement in the Court of Appeals certainly suggests, that Wells Fargo will be presenting legal issues to the appellate court.[4]

Once the Federal Circuit resolves those issues, it will be up to this Court, in light of those holdings, to decide how to apply them here. This Court can decide under the Federal Circuit's binding legal standards whether evidence proffered at trial is relevant or irrelevant; whether responses to such evidence are proper or improper; and whether witnesses on particular topics are even needed at all.[5] And of course, the Court's understanding and evaluation of the evidence it would hear at trial will only be enhanced and informed when considered and informed by the Federal Circuit's decision in *Wells Fargo*.

---

[4] Under "Relief sought on appeal", Wells Fargo states: "Reversal of the Court of Federal Claims' *holdings* that Wells Fargo is not entitled to tax deductions related to its ownership of equipment that it purchased as part of 26 sale-leaseback transactions. (Emphasis added).

[5] Plaintiff labels this as "specious" argument (Opp. at 5) and states that "*Regardless of the Federal Circuit's decision in Wells Fargo*, the parties may be expected to present evidence" regarding net present value, the purchase options and accounting matters." Plaintiff is wrong that these matters are purely factual, and that nothing the Federal Circuit might say regarding the legal issue relating to particular aspects of the transactions could possibly limit the evidence plaintiff will present or be the basis for a ruling by this Court that evidence is inadmissible or unnecessary.

Against these potent benefits from a stay pending appeal in *Wells Fargo*, plaintiff offers the conclusion that it would suffer detriment from a stay. But if plaintiff succeeds in this refund suit, it will be made whole with interest to compensate if for the time value of money. Plaintiff also complains of a lengthy stay, while ignoring the Federal Circuit's statistics we cited that show it takes, on average, less than ten months after an appeal is docketed to decide it. The *Wells Fargo* appeal was docketed on April 16, 2010. Its opening brief is due June 15th. Nevertheless, on no basis other than pure speculation, plaintiff argues that "it is likely" that a stay "could last for an indeterminate period, perhaps two years or more."[6] (Opp. at 6.) Similarly, plaintiff argues, without any support or specifics, that a stay will "only compound problems" due to the passage of time and the expenses of resuming trial preparations. A stay now, several months before the scheduled trial, precedes the usual frenzy of trial preparations. Indeed, now is a period of relative quiet between the end of discovery (and the Court's recent summary judgment ruling) and the beginning of serious trial preparation. There appears to be little likelihood of duplicate efforts if trial is stayed until *Wells Fargo* is decided. Plaintiff also points to no witness who is aged or ill, or any witness who is likely to be unavailable if trial is not held this fall. Indeed, this is primarily a documents case, not a memory and personal recall case. All the documents plaintiff wishes to present are all available. In short, the detriments of a stay, if any, are vastly outweighed by the benefits.

It is commonplace for this Court to grant a stay of proceedings to await Federal Circuit guidance from a pending appeal. This Court has often granted stays in significant tax cases while the Federal Circuit considered and resolved common issues in a similar case that would, at least,

---

[6]Plaintiff's counsel also suggests three times in his Opposition that there may never be an appellate decision in *Wells Fargo*. *See* Opp. at 2, 5, 6. He does not explain the basis for such an unusual assertion regarding the appeal he filed. We can think of none.

7

provide guidance applicable to the stayed matter, perhaps lead to a settlement, or even constitute controlling authority that would resolve the case on the merits. *See*, *e.g.*, *Russian Recovery Fund Ltd. v. United States*, Fed. Cl. No. 06-30 (stayed on two occasions; first to resolve a statute of limitations issue presented in the Federal Circuit in *AD Global Fund LLC v. United States*(Dkt. 9), and, a second time, over plaintiff's objection, to obtain a ruling on a different statute of limitations issue presented in *Salman Ranch Ltd. v. United States*(Dkt. 57)); *Leadbetter Family LLP v. United States*, Fed. Cl. No. 06-492 (stay granted at beginning of appeals process in *Salman Ranch* (Dec. 17, 2007) and continues over the plaintiff's objection to allow the Federal Circuit to decide another case, *Grapevine*, addressing another legal issue,because, without a stay, the parties would expend considerable effort briefing the issue before the Federal Circuit (Dkt. 53)); *Becker Partners v. United States*, Fed. Cl. No. 06-504 (Dkt. 44) (same).[7]

This Court also has stayed cases while a similar case was still before the Court of Federal Claims. *See, e.g., Northrop Corporation Employee Insurance Benefit Plans Master Trust v. United States*, Case No. 08-23 (Dkt. 14) (stayed pending final resolution of *CNG Transmission Management VEBA*, Fed. Cl. No. 06 541, which also involved whether a voluntary employees' beneficiary association may avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) by allocating investment income to the payment of member benefits); *Bates v. United*

---

[7]In *Washington Mutual, Inc. v. United States*, Case No. 08-211 (Feb. 18, 2009) (Dkt. 33) the Court of Federal Claims stayed proceedings pending a decision from the Ninth Circuit Court of Appeals where the similarity of issues involved in the case, which was just in the process of being appealed to the Ninth Circuit, was sufficient to "significantly increase the possibility of resolving the case without a trial." *See also Washington Mutual, Inc. v. United States*, Case No. 08-321 (Feb. 18, 2009) (Dkt. 30) (same).

*States*, Fed. Cl. No. 02-1123, 04-1495 (example of approximately thirty cases[8] stayed pending the resolution of *Bush v. United States*, Fed. Cl. Nos. 02-1041, 04-1598 and *Shelton v. United States*, Fed. Cl. Nos. 02-1042, 04-1595, which involve, in the partnership context, the necessity of issuing notices of deficiency on assessments made post-closing agreement, which cases are currently pending, on consideration of both sides' petitions for rehearing *en banc*); *Arumugam v. United States*, Fed. Cl. No. 05-627 (Dkt. 10) (one of approximately 100 cases[9] stayed pending resolution of *Prati v. United States*, - - - F.3d - - -, 2010 WL 1782901 (Fed. Cir. 2010), *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009), and/or *Schell v. United States*, 589 F.3d 1378 (Fed. Cir. 2009), on the basis that the resolution of representative cases would be instructive, and perhaps dispositive of the stayed cases); *Fastnet Corp. v. United States*, Fed. Cl. No. 05-1019 (example of several cases[10] concerning whether telephone service used by internet service providers was a taxable local service,

---

[8] *Estate of Gerald Cooper v. United States*, Fed. Cl. No. 02-1550; *Cox v. United States*, Fed. Cl. No. 05-839; *Duldner v. United States*, Fed. Cl. No. 02-108; *Fagerland v. United States*, Fed. Cl. No. 04-1597; *Flynn v. United States*, Fed. Cl. Nos. 05-19 and 05-307; *Gamble v. United States*, Fed. Cl. No. 05-115; *Green v. United States*, Fed .Cl. No. 06-368; *Habenicht v. United States*, Fed. Cl. Nos. 04-1596 and 05-505; *Hendryx v. United States*, Fed. Cl. No. 04-1433; *Larson v. United States*, Fed. Cl. Nos. 05-379 and 04-1397; *Mandich v. United States*, Fed. Cl. Nos. 02-1222 and 05-18; *McCarthy v. United States*, Fed. Cl. No. 05-190; *Nelson v. United States*, Fed. Cl. No. 05-198; *Nirschl v. United States*, Fed. Cl. Nos. 02-1551 and 05-1112; *Pannico v. United States*, Fed. Cl. No. 02-278; *Romain v. United States*, Fed. Cl. No. 05-199; *Secord v. United States*, Fed. Cl. No. 03-878; *Wagner v. United States*, Fed. Cl. No. 04-1599; *Whitehurst v. United States*, Fed. Cl. Nos. 03-1616 and 05-1200; *Wood v. United States*, Fed. Cl. No. 05-1005; and *Yett v. United States*, Fed. Cl. No. 06-347.

[9] *See*, *e.g.*, *Six v. United States*, Fed. Cl. No. 05-908 (Dkt. 10); *Brandsted v. United States*, Fed. Cl. No. 06-540 (Dkt. 9); *Kettle v. United States*, Fed. Cl. No. 04-683 (Dkt. 52); *Dahlberg* v. *United States*, Fed. Cl. No. 01-720 (Dkt. 43)); *Epps v. United States*, Fed. Cl. No. 06-615 (Dkt. 13); *Koretz v. United States*, Fed. Cl. No. 02-912 (Dkt. 18)); *Isler v. United States*, Fed. Cl. No. 01-344.

[10] *See*, *e.g.*, *Alleghenyintel, LLC v. United States*, Fed. Cl. No. 06-548 (Dkt. 7); *Expedient Holdings LLC v. United States*, Fed. Cl. No. 05-1264 (Dkt. 14).

which were stayed pending the outcome of *XO Communications v. United States*, Fed. Cl. No. 03-2754; *Comcation v. United States*, Fed. Cl. No. 05-515; and *USA Choice v. United States*, Fed Cl. No. 05-525 in the Court of Federal Claims and subsequently the Federal Circuit's resolution of *USA Choice*). This court has also stayed tax cases pending a decision from the United States Supreme Court in a case involving a similar issue of law. *See Bonano v. United States*, 12 Cl. Ct. 769 (1987) (staying proceedings until ultimate disposition of *Coplin v. United States* by Supreme Court where legal issue with dispositive impact on outcome of stayed case was presented to the Supreme Court in *Coplin*).

In all of these cases, this Court recognized the efficient conservation of resources that results from staying proceedings to obtain guidance from a decision in another case. Likewise, a stay here will save resources, because a decision on appeal in *Wells Fargo* promises to simplify "issues, proof, and questions of law" key to this case. *See CMAX, Inc.,* 300 F.2d 265, 268 (9th Cir. 1962); *Coast Federal Bank, FSB v. United States*, 49 Fed. Cl. 11, 15 (2001); *Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1196 (11th Cir. 2009).

CONCLUSION

For the reasons expressed in our motion and this reply, proceedings should be stayed pending the Federal Circuit's opinion in *Wells Fargo v. United States*, Case No. 2010-5108.  Defendant proposes that the parties submit a joint status report regarding further proceedings within 21 days after the issuance of the Federal Circuit's opinion.

>Respectfully Submitted,
>
>s/ Joseph A. Sergi
>JOSEPH A. SERGI
>Attorney of Record
>Senior Litigation Counsel
>U.S. Department of Justice, Tax Division
>Post Office Box 26, Ben Franklin Station
>Washington, D.C. 20044
>Telephone: (202) 305-0868
>Facsimile: (202) 307-0054
>
>JOHN A. DiCICCO
>   Acting Assistant Attorney General
>STEVEN I. FRAHM
>   Chief, Court of Federal Claims Section
>ADAM R. SMART
>CAROLINE A. NEWMAN
>   Trial Attorneys
>
>s/ Steven Frahm
>STEVEN I. FRAHM
>   Of Counsel

June 1, 2010